**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| MICHAEL RICE, | Case No. 3:19-CV-0581-ART-CLB |
| Plaintiff, | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1] |
| v. | [ECF No. 29] |
| HAROLD WICKHAM, *et al.*, | |
| Defendants. | |

This case involves a civil rights action filed by Plaintiff Michael Rice ("Rice") against Defendants Michael Minev ("Minev") and Martin Naughton ("Naughton") (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF Nos. 29, 31.)[2] Rice opposed the motion, (ECF No. 37), and Defendants replied. (ECF No. 39.) For the reasons stated below, the Court recommends that Defendants' motion for summary judgment, (ECF No. 29), be granted.

I.    **PROCEDURAL HISTORY**

Rice is an inmate formerly in the custody of the Nevada Department of Corrections ("NDOC"). (*See* ECF Nos. 25, 40.) On September 18, 2019, Rice initiated this lawsuit by filing an application to proceed *in forma pauperis* and a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Before the Court could conduct a screening of the original complaint, Rice filed a first amended complaint, (ECF No. 3), which the District Court screened. (ECF No. 4.) On September 9, 2021, Rice filed a motion for leave to file a second amended complaint, (ECF No. 22), which was unopposed by Defendants. (ECF No. 23). Accordingly, the Court granted the motion for leave to file a second amended complaint, (ECF No. 24), and the operative complaint in this case is Rice's

---

[1]    This Report and Recommendation is made to the Honorable Anne R. Traum, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]    ECF No. 31 consists of Rice's medical records filed under seal.

second amended complaint filed pursuant to 42 U.S.C. § 1983. (ECF No. 25.)

In his Second Amended Complaint, Rice sues NDOC Medical Director Michael Minev and Northern Nevada Correctional Center ("NNCC") Physician Martin Naughton and asserts two claims and seeks declaratory and monetary relief. (*Id.* at 2, 11.) Rice claims that Minev was the Medical Director of the NDOC and was constitutionally responsible for providing adequate medical care for his Hepatitis-C (referred to as "Hep-C" or "HCV") infection. (*Id.* at 5). Rice also claims Defendants Minev and Naughton, his treating physician, had actual knowledge he was suffering from "extrahepatic" manifestations for this chronic HCV infection. (*Id.*) Rice alleges that Defendants recklessly and deliberately delayed in providing him with proper treatment for his condition to save money. (*Id.* at 6) Rice alleges that conduct was a violation of his rights under the Eighth Amendment to the Constitution, and a violation of his rights under Article 1, Section 6 of the Nevada State Constitution. (*Id.* at 5-7.)

## II.    FACTUAL BACKGROUND

Hepatitis C or "Hep-C" is a blood borne pathogen transmitted primarily by way of percutaneous exposure to blood. "HCV" is chronic Hep-C as diagnosed by a qualified medical practitioner. (ECF No. 29-2 at 16.) Chronic Hep-C results in liver fibrosis. (ECF No. 29-5 at 2 (Declaration of Dr. Minev).) Fibrosis is the initial stage of liver scarring. (*Id.*) Chronic Hep-C builds up fibrosis (scar tissue) in the afflicted person's liver. (*Id.*) When the fibrosis increases, it can lead to cirrhosis of the liver, a liver disease that forestalls common liver function. (*Id.*) When liver cells are not functioning, certain clinical signs will appear on the patient, which include but not limited to: (1) spider angiomata (vascular lesions on the chest and body); (2) palmar erythema (reddening of the palms); (3) gynecomastia (increase in breast gland size); (4) ascites (accumulation of fluid in the abdomen); and (5) jaundice (yellow discoloration of the skin and mucous membranes). (*Id.*)

Medical Directive ("MD") 219 governs treatment of HCV at the NDOC. (*See* ECF No. 29-2 at 15-21.) At the time Rice filed his initial grievance related to his Hep-C

2

treatment at issue in this case, inmates that tested positive for HCV were enrolled in the Infectious Disease Chronic Clinic for Hepatitis C. (ECF No. 29 at 5.) A committee made up of at least three senior members of the medical department reviewed each HCV positive inmate and evaluated treatment options. (*Id.*) A non-invasive method of procuring a patient's Chronic Hep-C progression, in addition with the clinical signs, is through the Aspartate Aminotransferase Platelet Ratio Index ("APRI") formula. (ECF No. 29-5 at 3.) To calculate a patient's APRI score, the patient's blood platelet count, which is obtained through a blood test, is necessary. (*Id.*) An APRI score is calculated using the AST to Platelet Ratio Index. (*Id.*) NDOC prioritized treatment based on an inmates APRI score. (ECF No. 29 at 5.) Inmates with an APRI score greater than 2 were prioritized for direct acting antiviral treatment. (*Id.*) Direct acting antiviral ("DAA") treatment, such as Epclusa, is an FDA-approved treatment for HCV. (ECF No. 29-2 at 16 (defining DAA).) Inmates with a score of less than 2 were not prioritized for the HCV DAA treatment protocals but did receive treatment and monitoring through the Hep-C Clinic. (*Id.*)

MD 219 has been revised several times from the first version relevant to this litigation, which was adopted on May 17, 2017, and again in November 2019 and January 2020. (ECF No. 29-2 at 5.) The current version of MD 219 ensures that each inmate has been or is tested, and that those inmates who test positive, and who do not make the voluntary choice to opt out of treatment, will be treated with DAAs. (*Id.* at 15-21.) The policy applies to all inmates unless there are medical issues that would make doing so cause more harm. (*Id.* at 17-20.) MD 219 established three priority levels for DAA treatment. This priority level system guarantees that all HCV patients will receive DAAs as needed and required to treat their condition, while at the same time providing medical personnel with discretion and flexibility to safeguard that those in a lower level of priority obtain expedited DAA treatment when in the sound judgment of the medical provider examining the patient it is determined that it is medically necessary. (*Id.* at 19-20; ECF No. 29-5.)

Defendants submitted authenticated, and undisputed evidence, detailing the

1  medical treatment Rice received related to his Hep-C while incarcerated. (*See* ECF Nos.

2  31-1, 31-2, 31-3, 31-4, 31-5, 31-6, 31-7 (sealed).) According to this evidence, Rice was

3  first enrolled in the NDOC's Chronic Care Clinic ("CCC") for monitoring of his Hep-C in

4  November 2018. (ECF No. 31-3 at 7 (sealed); ECF No. 37 at 15.) Thereafter, Rice

5  received routine care through the CCC for his Hep-C. (ECF No. 31-2 (sealed).)

6      In March 2018, Rice's APRI score was 0.51. (ECF No. 37 at 15, 22.) APRI scores

7  of greater than 0.3 but less than or equal to 0.5 indicate cirrhosis is unlikely, but significant

8  fibrosis is possible. (*Id.* at 22.) APRI scores of greater than 0.5 but less than or equal to

9  1.5 indicate significant fibrosis or cirrhosis possible. (*Id.*) In April 2019, lab results show

10  Rice had a fibrosure score[3] of 0.35 with a fibrosis stage F1-F2. (ECF No. 31-7 (sealed);

11  ECF No. 37 at 26.) Rice's APRI Score in April 2019 was 0.74. (ECF No. 31-3 at 1 (sealed);

12  ECF No. 37 at 25.) In March 2020, lab results show Rice had a fibrosure score of 0.43

13  with a fibrosis stage F1-F2. (ECF Nos. 31-1 at 2, 31-3 at 5 (sealed); ECF No. 37 at 27.)

14  CCC records from June 2021 show a fibrosure score of 0.52 with a fibrosis stage F2.

15  (ECF No. 31-2 at 3 (sealed).)

16      On June 11, 2021, an abdominal ultrasound was performed on Rice. (ECF No. 31-

17  4 (sealed).) The results of the abdominal ultrasound showed "[h]epatomegaly and

18  sonographic changes of chronic liver disease. No liver mass is visible." (*Id.*) On July 9,

19  2021, Rice was seen by Northern Nevada Hopes to evaluate him for treatment for his

20  Hep-C. (ECF No. 31-5 (sealed).) Progress notes from Rice's visit show his ultrasound

21  was "current and normal", he had normal renal function, he was in no distress, no spider

22  angiomata or palmar erythema was noted, no hepatosplenomegaly noted, and no

23  cirrhosis. (*Id.*) At the visit, Rice was authorized to receive DAA treatment (Epclusa) for his

24  HCV. (*Id.* at 6.) Physician notes indicate Rice received DAA treatment on August 18,

25  2021. (*Id.* at 5.) Following this treatment, Rice's lab results indicate HCV is no longer

26  detected. (ECF No. 31-6 (sealed).)

27   

28  [3]   A "fibrosure score" is a quantitative surrogate marker for liver fibrosis. (ECF No. 31-1 at 2 (sealed).)

4

Defendant Naughton, Senior Physician at NNCC, filed a declaration in support of the motion for summary judgment, stating that he reviewed Rice's medical record and he has been under the continuous care of many doctors employed by the NDOC and has been seen and treated for various ailments over his time at NNCC. Naughton was not a member of the Review Committee tasked with the responsibility of approving treatment for Hep-C. Naughton did not prescribe advanced treatment for Hep-C because Rice did not qualify. However, Naughton states he never told Rice that he was not treated due to the cost of the treatment. Rice's APRI score was 0.74 at the time Naughton saw him, which is not an indication of advanced cirrhosis. Naughton has never diagnosed Rice as suffering from advanced cirrhosis of the liver. (ECF No. 29-6.)

Defendant Minev, current NDOC Medical Director, filed a declaration in support of the motion for summary judgment, stating as follows: if a patient's APRI score is above 0.5, there is likely some liver damage (fibrosis) and if the APRI score is above 1.5, the patient likely has or is quickly approaching cirrhosis of the liver. (ECF No. 29-5 at 3.) The APRI score is not definitive but is a reliable indicator of liver fibrosis. (*Id.*) As part of his duties, Minev oversees the Chronic Hep-C treatment program at Ely State Prison. (*Id.*) He has reviewed test results and medical records of NDOC inmates to determine who required advanced forms of Hep-C treatment. (*Id.*) In addition to APRI scores, Minev also considers the inmates' clinical signs of forestalled or reduced liver function. (*Id.*) He almost always declined to recommend an NDOC inmate with Hep-C, who has an APRI score near or below 1.0 for advanced forms of Hep-C treatment due to risk that drug intervention may cause to a patient with Hep-C. (*Id.*) All inmates who test positive for HCV and are otherwise medically indicated receive advanced treatment. (*Id.*)

As to Rice specifically, Minev stated he reviewed Rice's medical records and can attest that Rice suffers from Chronic Hepatitis C and his APRI score, based on blood test results in March 2019, was 0.74. (*Id.* at 3-4.) Rice did not exhibit any symptoms of decreased liver function, namely: (1) spider angiomata; (2) palmar erythema; (3) gynecomastia; (4) ascites; or (5) jaundice. (*Id.* at 4.) Based on Rice's APRI score and lack

of clinical signs indicating decreased liver function, Rice was not a candidate for HCV treatment at the time of his grievance. (*Id.*) Rice has since received treatment and no longer shows HCV in his system. (*Id.*) Rice received medical attention through the CCC but there were occasions when he failed to keep his appointments. (*Id.*) There is no indication in Rice's medical records that he suffered pain because of his HCV, and he did not suffer from the usual symptoms of HCV. (*Id.*) While an ultrasound taken in conjunction with his HCV treatment showed a "coarse texture", there were no liver masses and there were no clinical indications of liver disease. (*Id.*)

On March 12, 2019, Rice filed an informal grievance stating he had been notified that he did not qualify for DAA treatment of his Hep-C and asked that the decision be "reversed." (ECF No. 29-1 at 3-4.) The response to his informal grievance stated Rice did not qualify for DAA treatment at that time but if he felt he needed to be re-evaluated, he should submit a medical kite and he would be scheduled to see a provider. (*Id.* at 2.) On April 17, 2019, Rice filed his first level grievance regarding treatment for his Hep-C. (*Id.* at 7.) The response to the first level grievance again stated Rice did not meet the criteria for Hep-C treatment at that time but stated that Rice was enrolled in the CCC, and his condition would be monitored. (*Id.* at 6.) On June 15, 2019, Rice filed his second level grievance regarding treatment for his Hep-C. (*Id.* at 9.) The response to the second level grievance stated that the responding party agreed with the responses at the informal and first levels and noted that Medical Directive 219 outlined the criteria for treatment and inmates qualifying for treatment may receive it regardless of cost. (*Id.* at 8.) None of the grievance responses listed physical damage or cost as a criterion to warrant receiving the cure for Hep-C. After exhausting his administrative remedies, Rice filed this lawsuit.

III.   **LEGAL STANDARDS**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim determines which facts are material. *Coles v.*

*Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any

inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct.  *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

1    Upon the parties meeting their respective burdens for the motion for summary

2    judgment, the court determines whether reasonable minds could differ when interpreting

3    the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City

4    of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in

5    the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3).

6    Nevertheless, the court will view the cited records before it and will not mine the record

7    for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party

8    does not make nor provide support for a possible objection, the court will likewise not

9    consider it).

10   **IV.    DISCUSSION**

11   On February 28, 2022, Defendants filed the instant motion for summary judgment

12   arguing: (1) Defendants were not deliberately indifferent to Rice's serious medical needs;

13   (2) Rice was not harmed by any alleged delay in treatment; (3) Minev had no personal

14   participation in the alleged constitutional violations; and (4) alternatively, Defendants are

15   entitled to qualified immunity. (ECF No. 29.) Rice opposed the motion, and Defendants

16   replied. (ECF Nos. 37, 39.) The Court addresses these arguments.

17   **A.    Deliberate Indifference to Serious Medical Needs**

18   The Eighth Amendment "embodies broad and idealistic concepts of dignity,

19   civilized standards, humanity, and decency" by prohibiting the imposition of cruel and

20   unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal

21   quotation omitted). The Amendment's proscription against the "unnecessary and wanton

22   infliction of pain" encompasses deliberate indifference by state officials to the medical

23   needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that

24   "deliberate indifference to a prisoner's serious illness or injury states a cause of action

25   under § 1983." *Id.* at 105. Article 1, Section 6 of the Nevada Constitution mirrors the Eighth

26   Amendment's Cruel and Unusual Punishment Clause, and provides protections that are

27   coextensive with the Eighth Amendment of the United States Constitution. Courts in this

28   district have applied the same legal standards to the cruel and unusual punishment

corollary included in Article 1, Section 6 of the Nevada Constitution as are applied to the corollaries in the United States Constitution. *See, e.g, Fowler v. Sisolak*, No. 2:19-cv-01418-APG-DJA, 2020 WL 6270276, at *4 (D. Nev. Oct. 26, 2020).

Courts in Ninth Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell*, 763 F.3d at 1066 (internal quotation omitted). First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which he or she can infer that a substantial risk of harm exists and make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other. . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due

care." *Id.* at 835 (internal quotation omitted).

Moreover, the medical care due to prisoners is not limitless. "[S]ociety does not expect that prisoners will have unqualified access to health care…." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Accordingly, prison officials are not deliberately indifferent simply because they selected or prescribed a course of treatment different than the one the inmate requests or prefers. *Toguchi*, 391 F.3d at 1058. Only where the prison officials' "'chosen course of treatment was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health,'" will the treatment decision be found unconstitutionally infirm. *Id.* (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). In addition, it is only where those infirm treatment decisions result in harm to the plaintiff—though the harm need not be substantial—that Eighth Amendment liability arises. *Jett*, 439 F.3d at 1096.

### 1.    Analysis

Starting with the objective element, the parties agree that Rice's Hep-C constitutes a "serious medical need." However, Defendants argue summary judgment should be granted because Rice cannot establish the second, subjective element of his claim. Specifically, Defendants argue they were not deliberately indifferent to Rice's condition. Under the subjective element, there must be some evidence to create an issue of fact as to whether the prison official being sued knew of, and deliberately disregarded the risk to Rice's safety. *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Moreover, this requires Rice to "demonstrate that the defendants' actions were both an actual and proximate cause of [his] injuries." *Lemire v. California*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098-1101 (9th Cir. 2010), *vacated by City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011).

Here, as detailed above, Defendants submitted authenticated and undisputed evidence regarding the medical treatment Rice received while incarcerated related to his

Hep-C. (*See* ECF Nos. 31-1, 31-2, 31-3, 31-4, 31-5, 31-6, 31-7 (sealed).) According to this evidence, Rice was first enrolled in CCC for monitoring of his Hep-C in November 2018. (ECF No. 31-3 at 7 (sealed); ECF No. 37 at 15.) Rice received routine care through the CCC for his Hep-C. (ECF No. 31-2 (sealed).)

In March 2018, Rice's APRI score was 0.51. (ECF No. 37 at 15, 22.) APRI scores of greater than 0.3 but less than or equal to 0.5 indicate cirrhosis is unlikely, but significant fibrosis is possible. (*Id.* at 22.) APRI scores of greater than 0.5 but less than or equal to 1.5 indicate significant fibrosis or cirrhosis possible. (*Id.*) In April 2019, lab results show Rice had a fibrosure score of 0.35 with a fibrosis stage F1-F2. (ECF No. 31-7 (sealed); ECF No. 37 at 26.) Rice's APRI Score in April 2019 was 0.74. (ECF No. 31-3 at 1 (sealed); ECF No. 37 at 25.) In March 2020, lab results show Rice had a fibrosure score of 0.43 with a fibrosis stage F1-F2. (ECF Nos. 31-1 at 2, 31-3 at 5 (sealed); ECF No. 37 at 27.) CCC records from June 2021 show a fibrosure score of 0.52 with a fibrosis stage F2. (ECF No. 31-2 at 3 (sealed).) On June 11, 2021, an abdominal ultrasound was performed on Rice. (ECF No. 31-4 (sealed).) The results of the abdominal ultrasound showed "[h]epatomegaly and sonographic changes of chronic liver disease. No liver mass is visible." (*Id.*) On July 9, 2021, Rice was seen by Northern Nevada Hopes to evaluate him for treatment for his Hep-C. (ECF No. 31-5 (sealed).) Progress notes from his visit show Rice's ultrasound was "current and normal", he had normal renal function, he was in no distress, no spider angiomata or palmar erythema was noted, no hepatosplenomegaly noted, and no cirrhosis. (*Id.*) At the visit, Rice was authorized to receive DAA treatment for his HCV. (*Id.* at 6.) Physician notes indicate Rice received treatment on August 18, 2021. (*Id.* at 5.) Following this treatment, Rice's lab results indicate HCV is no longer detected. (ECF No. 31-6 (sealed).)

Defendant Naughton, Senior Physician at NNCC, filed a declaration in support of the motion for summary judgment, stating that he reviewed Rice's medical record and he has been under the continuous care of many doctors employed by the NDOC and has been seen and treated for various ailments over his time at NNCC. Naughton was not a

member of the Review Committee tasked with the responsibility of approving treatment for Hep-C. Naughton did not prescribe advanced treatment for Hep-C because Rice did not qualify. However, Naughton states he never told Rice that he was not treated due to the cost of the treatment. Rice's APRI score was 0.74 at the time Naughton saw him, which is not an indication of advanced cirrhosis. Naughton has never diagnosed Rice as suffering from advanced cirrhosis of the liver. (ECF No. 29-6.)

Defendant Minev, current NDOC Medical Director, filed a declaration in support of the motion for summary judgment, stating as follows: if a patient's APRI score is above 0.5, there is likely some liver damage (fibrosis) and if the APRI score is above 1.5, the patient likely has or is quickly approaching cirrhosis of the liver. The APRI score is not definitive but is a reliable indicator of liver fibrosis. As part of his duties, Minev oversees the Chronic Hep-C treatment program at Ely State Prison. He has reviewed test results and medical records of NDOC inmates to determine who required advanced forms of Hep-C treatment. In addition to APRI scores, Minev also considers the inmates' clinical signs of forestalled or reduced liver function. He almost always declined to recommend an NDOC inmate with Hep-C, who has an APRI score near or below 1.0 for advanced forms of Hep-C treatment due to risk that drug intervention may cause to a patient with Hep-C. All inmates who test positive for HCV and are otherwise medically indicated receive advanced treatment. (ECF No. 29-5.)

Moreover, as to Rice specifically, Minev stated he reviewed Rice's medical records and can attest that Rice suffers from Chronic Hepatitis C and his APRI score, based on blood test results in March 2019, was 0.74. Rice did not exhibit any symptoms of decreased liver function, namely: (1) spider angiomata; (2) palmar erythema; (3) gynecomastia; (4) ascites; or (5) jaundice. Based on Rice's APRI score and lack of clinical signs indicating decreased liver function, Rice was not a candidate for HCV treatment at the time of his grievance. Rice has since received treatment and no longer shows HCV in his system. Rice received medical attention through the CCC but there were occasions when he failed to keep his appointments. There is no indication in Rice's medical records

that he suffered pain because of his HCV, and he did not suffer from the usual symptoms of HCV. While an ultrasound taken in conjunction with his HCV treatment showed a "coarse texture", there were no liver masses and there were no clinical indications of liver disease. (ECF No. 29-5.)

On March 12, 2019, Rice filed an informal grievance stating he had been notified that he did not qualify for treatment of his Hep-C and asked that the decision be "reversed." (ECF No. 29-1 at 3-4.) The response to his informal grievance stated Rice did not qualify for Hep-C treatment at that time but if he felt he needed to be re-evaluated, he should submit a medical kite and he would be scheduled to see a provider. (*Id.* at 2.) On April 17, 2019, Rice filed his first level grievance regarding treatment for his Hep-C. (*Id.* at 7.) The response to the first level grievance again stated Rice did not meet the criteria for Hep-C treatment at that time but stated that Rice was enrolled in the CCC, and his condition would be monitored. (*Id.* at 6.) On June 15, 2019, Rice filed his second level grievance regarding treatment for his Hep-C. (*Id.* at 9.) The response to the second level grievance stated that the responding party agreed with the responses at the informal and first levels and noted that Medical Directive 219 outlined the criteria for treatment and inmates qualifying for treatment may receive it regardless of cost. (*Id.* at 8.) None of the grievance responses listed physical damage or cost as a criterion to warrant receiving the cure for Hep-C.

Based on the above evidence, the Court finds that Defendants have submitted authenticated evidence that establishes they affirmatively monitored and ultimately treated Rice's Hep-C. Therefore, the Court finds Defendants have met their initial burden on summary judgment by showing the absence of a genuine issue of material fact as to the deliberate indifference claim. *See Celotex Corp.*, 477 U.S. at 325. The burden now shifts to Rice to produce evidence that demonstrates an issue of fact exists as to whether Defendants were deliberately indifferent to his medical needs. *Nissan*, 210 F.3d at 1102.

Rice's opposition reiterates his claim that the delay in providing him treatment for his Hep-C caused him further damage and asserts the sole purpose for the delay was to

save money on medical costs. (ECF No. 37.) Rice asserts Defendants were deliberately indifferent to Rice because they allowed Rice's ALT levels to remain highly elevated for an extended period which proximately caused "permanent scarring to [Rice's] liver, i.e., fibrosis." (*Id.* at 4.) Rice points to several of his own medical records, mainly lab records, to support that the delay in treatment caused fibrosis. (*Id.* at 15-27.) Aside from his own medical records (much of which were provided with Defendants' summary judgment), Rice provides no further evidence or support for his assertion that a delay in treatment for his Hep-C was <u>the cause</u> of fibrosis. Further, Rice has failed to provide any evidentiary support for his claim that the sole purpose of alleged delay in treatment was to save money on medical costs.

Aside from Rice's own conclusions and statements, he has not come forward with evidence to show Defendants knew of an excessive risk to his health and disregarded that risk. The evidence before the Court shows Rice was treated for his Hep-C through monitoring and other actions and there is no evidence showing that his Hep-C or any delay in providing treatment was <u>the cause</u> of any damage or that any such delay was based on costs. Therefore, Rice has failed to meet his burden on summary judgment to establish that prison officials were deliberately indifferent to his medical needs as he failed to come forward with any evidence to create an issue of fact as to whether Defendants deliberately denied, delayed, or intentionally interfered with the treatment plan. *See Hallett*, 296 F.3d at 744.

Moreover, to the extent that Rice's assertions in this case are based upon his disagreement with Defendants' choice of treatment, this does not amount to deliberate indifference. *See Toguchi*, 391 F.3d at 1058. In cases where the inmate and prison staff simply disagree about the course of treatment, only where it is medically unacceptable can the plaintiff prevail. *Id.* Therefore, Rice has failed to show that the NDOC's "chosen course of treatment was medically unacceptable under the circumstances." *Id.* Accordingly, Rice fails to meet his burden to show an issue of fact that Defendants were deliberately indifferent to his needs because Rice has only shown that he disagrees

between alternative courses of treatment, such as being given drug intervention treatment as opposed to having his HCV monitored for progression.

Based on the above, the Court recommends that Defendants' motion for summary judgment as to the United States and Nevada Constitutional deliberate indifference claims be granted.[4]

## V.   CONCLUSION

For good cause appearing and for the reasons stated above, the Court recommends that Defendants' motion for summary judgment, (ECF No. 29), be granted.

The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VI.   RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment, (ECF No. 29), be **GRANTED**; and,

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** in favor of Defendants and **CLOSE** this case.

**DATED**: June 23, 2022    .

_____
**UNITED STATES MAGISTRATE JUDGE**

---

[4]    Because the Court finds that Rice's claims fail on the merits, the Court need not address Defendants' personal participation or qualified immunity arguments.

16